UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                                    )
JENNIFER TAYLOR,                                          )        No. C05-0243L
                                                                    )
                        Plaintiff,       )
        v.                                                    )
                                                                    )        ORDER GRANTING PLAINTIFF'S
KAHNE CORPORATION, *et al.*,                      )        MOTION FOR SUMMARY
                                                                    )        JUDGMENT
                        Defendants.    )
_____)

        This matter comes before the Court on plaintiff's "Motion for Partial Summary Judgment re: WISHA Violations" (Dkt. # 25), "Defendant Kahne Corporation's Summary Judgment Motion" (Dkt. # 27), and "Defendant Portac, Inc.'s Motion for Summary Judgment" (Dkt. # 29). All three motions turn on whether defendants had a duty to provide a safe place of work to the employees of W.B. Cutting, Inc.

        John M. Clark, a timber cutter from Alaska, was killed on February 19, 2002, while working for W.B. Cutting in an area known as Legacy Overlook near Snohomish, Washington. Clark suffered fatal injuries when a hemlock tree that he was falling hit an alder tree, causing the upper portion of the alder tree to break off and fall back in the direction where Clark was standing. Plaintiff Jennifer Taylor, the personal representative of Clark's estate, has brought this wrongful death suit against Portac, Inc., the owner of the forest products being

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

harvested from Legacy Overlook, and Kahne Corporation, the logger Portac hired to harvest the trees.  Plaintiff argues that Stute v. P.B.M.C., Inc., 114. Wn.2d 454 (1990), and Husfloen v. MTA Constr., Inc., 58 Wn. App. 686 (1990), govern this case and compel a finding that defendants had a duty to comply, or to ensure that their subcontractors complied, with Washington Industrial Safety and Health Act ("WISHA") regulations.[1]  Defendants, on the other hand, argue that Portac's role at Legacy Overlook was not analogous to the general contractor held liable in Stute and that neither Portac nor Kahne retained or exercised sufficient control over the site to be held liable for injuries suffered by an employee of W.B. Cutting.

Because the primary issue in this case is the existence of a duty, the relationships between the parties must be set forth in detail.  In July 2001, defendant Portac agreed to "purchase, cut, and remove" forest products from property owned by the Washington State Department of Natural Resources ("DNR").  Portac promised to provide all work, equipment and materials necessary to perform under the contract, to comply with all applicable laws and regulations, and to "have a person on site during all operations who is authorized to receive instructions and notices from the State." Decl. of Terry A. Venneberg, Ex. A, § G-160 (Dkt. # 26.)  The parties to the contract anticipated that Portac would subcontract certain aspects of the work at the site, but the delegation of any contractual duty to a subcontractor would not relieve Portac of any liability or duty to perform.  Portac also agreed to defend and indemnify the State from all claims arising out of the performance of the contract.

---

[1] Defendants admit that neither Portac nor Kahne took steps to ensure that the timber-cutting operations were conducted in compliance with applicable WISHA regulations, such as WAC 296-54-507(3) which requires employers to "ensure that danger trees within the reach of . . . work areas are either fell before regular logging operations begin, or arrange work so that employees are not exposed to the related hazards."  Nor is there any real dispute regarding the causation element of plaintiff's negligence claim: in response to plaintiff's motion for summary judgment regarding WISHA violations, defendants challenged only the existence of a duty.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                          -2-

Within a matter of days, Portac contracted with defendant Kahne to obtain logging services, including timber cutting, yarding, loading, hauling, refuse removal, erosion control, road maintenance, and fire prevention activities. Kahne agreed to perform these tasks in compliance with all government regulations and the terms of Portac's contract with DNR. Further delegation of Kahne's contractual duties was possible, but Kahne was required to obtain the prior written permission of Portac before subcontracting. Finally, Kahne agreed to indemnify Portac from all claims arising out of the performance of its contract.

Approximately six months later, and shortly before logging operations at the site were to commence, Kahne subcontracted with W.B. Cutting, Inc., for timber-cutting services. The subcontract specifically states that W.B. Cutting is an independent contractor who will "conduct all operations under this contract in a manner to avoid the risk of bodily harm to persons or risk of damage to property." W.B. Cutting promised to perform its cutting operations safely and in full compliance with all applicable laws and regulations. Kahne expressly delegated all control over the method by which the tree cutters performed their work to W.B. Cutting. As with the two upper-tier contracts, W.B. Cutting agreed to indemnify Kahne against all claims arising out of the performance of its contract.

Although each of the contracting parties agreed to perform its duties in compliance with all applicable laws and regulations, none of the employers involved at Legacy Overlook felled danger trees (WAC 296-54-507(3)), developed an accident prevention program (WAC 296-54-51510(1)), held safety and health meetings (WAC 296-54-515(4)), or documented employee training (WAC 296-54-515(4)). Defendants conducted their operations in the apparent belief that they had effectively delegated their contractual duties to comply with WISHA to their subcontractors and that they had no nondelegable duty to ensure compliance. Portac, after engaging in pre-cutting meetings regarding the harvest plan and designating an

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                -3-

employee of Kahne as its on-site representative, had very little involvement at the site. Kahne, as the logging contractor, had employees at Legacy Overlook throughout the project but had not yet begun logging operations when Clark was killed. Although representatives from both Portac and Kahne walked the site before the fatal accident, the goal of these walk-throughs was to evaluate the type, size, and profitability of the trees in Legacy Overlook (Portac) and to develop bids and operational plans for the logging and cutting services (Kahne). In keeping with their belief that they had no duty to comply with WISHA, defendants did not walk the site in order to identify danger trees or take any steps to ameliorate on-site hazards before employees began work.

Whether defendants <u>should</u> have paid attention to safety matters at Legacy Overlook is the crux of this case. The existence of a duty of care is a question of law and, given that this is a diversity case, it is a question of state law. The relevant case law reveals an underlying tension between the policy decision to impose on certain upper-tier contractors a nondelegable duty to provide a safe work place for employees (<u>see</u> <u>Stute</u>, 114 Wn.2d at 464; <u>Husfloen</u>, 58 Wn. App. at 689-90) and the recurring theme that liability should attach to employers only where they have a level of knowledge, expertise, and/or control that would justify the imposition of such a duty (<u>see</u> <u>Kamla v. Space Needle Corp.</u>, 147 Wn.2d 114, 124 (2002); <u>Martinez Melgoza & Assoc., Inc. v. Dep't of Labor & Indus.</u>, 125 Wn. App. 843, 850-51 (2005); <u>Jones v. Halvorson-Berg</u>, 69 Wn. App. 117 124-25 (1993)). The parties have declined to certify this matter to the Washington State Supreme Court, leaving it to this Court to determine how this underlying tension should be resolved given the facts of this case.

The starting point in the analysis is that Washington courts assume that general contractors have control over the workplace and therefore have a nondelegable responsibility to comply, or ensure compliance, with WISHA. The issue, therefore, is whether Portac and/or

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT           -4-

Kahne held analogous positions to the contractors held liable in <u>Stutt</u> and <u>Husfloen</u> or whether they lacked the authority or expertise to influence work conditions at the site and are therefore more like the property owner in <u>Kamla</u> or the subcontractor in <u>Shingledecker v. Roofmaster Prods. Co.</u>, 93 Wn. App. 867, 872 (1999). Defendants argue that the term "general contractor" is associated most readily with the prime contractor at a construction site and, given the significant differences between a logging operation and the construction of a building, neither Portac's nor Kahne's roles at Legacy Overlook should trigger the nondelegable duty to provide a safe workplace. Having reviewed their contracts and the remainder of the record in this case, the Court finds that Portac and Kahne are "general" "contractors" similar to Bill's Plumbing in <u>Husfloen</u> and P.B.M.C. in <u>Stute</u>: they entered into contracts to perform broadly-defined services related to the clearing of Legacy Overlook and then subcontracted portions of the work to entities with specialized knowledge and skill. There is no reason to assume, as defendants urge, that the differences between a forest and a construction site (as significant as they obviously are) would alter Washington's policy determination that the best way to ensure the safety of workers is to make both their direct employers and the upper-tier contractors responsible for regulatory compliance. Having agreed to perform timber-cutting services in full compliance with all applicable laws and regulations, both Portac and Kahne had a contractual duty to comply with WISHA regulations or to ensure that their subcontractors did so.[2]

The record also shows that Portac, as the general contractor, and Kahne, as the

---

[2] This duty was nondelegable. <u>See</u>, e.g., <u>Morris v. Vaagen Bros. Lumber, Inc.</u>, 130 Wn. App. 243, 253 (2005). Even if the Court considers defendants' subsequent efforts to delegate this obligation to their subcontractors, such efforts appear to be ineffective. Portac's contract with DNR specifically states that the obligation to comply with applicable regulations may not be delegated (Decl. of Terry A. Venneberg, Ex. A, § G-170 (Dkt. # 26)), its contract with Kahne gave it a measure of control over any further subcontracting (Decl. of Terry A. Venneberg, Ex. C at 3 (Dkt. # 26)), and there is no indication that Kahne obtained the necessary written permission to subcontract.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT              -5-

upper-tier contractor, were in a better position than W.B. Cutting to ensure WISHA compliance. Defendants had access to the site long before W.B. Cutting was hired as the timber cutter and could have used that time and their site visits to identify danger trees and take other necessary precautions to ensure worker safety. Defendants, not W.B. Cutting, had a pre-logging opportunity to confer with the property owner regarding a plan of operations and potential hazards to employees on the site. Although Clark obviously had the last best chance to avoid the accident that killed him, the same can be said for most workplace accidents: the fact that an employee or his direct employer could have taken their own safety precautions does not absolve defendants of their independent contractual and regulatory duties to comply with WISHA. As for their level of expertise and knowledge, defendants are frequent participants in timber deals in this state and have a level of expertise that is at least commensurate with that of most generals on a construction site. It is a rare general contractor who possesses expertise in all the disciplines that are required in modern construction: most generals have one or two specialties in-house and rely on subcontractors for the skill and expertise in other trades that are necessary to complete the project. As for their control over the site, both Portac and Kahne had a representative on site in the form of Jim Ereth and the property owner viewed the contracting parties as a chain of authority through which issues could be raised and resolved: if there were a problem with the manner in which the tree cutters were doing their job, DNR's representative would first work with W.B. Cutting, then Kahne, and, if necessary, Portac to reach a resolution. These facts, taken together, show that defendants were "in the best position, financially and structurally, to ensure WISHA compliance or provide safety equipment to workers . . . ." Kamla, 147 Wn.2d at 124. Both their role as upper-tier contractors and their levels of knowledge, expertise, and/or control justify the imposition of the nondelegable duty to comply, or ensure compliance with, WISHA regulations at the Legacy Overlook site.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT              -6-

For all of the foregoing reasons, plaintiff's motion for summary judgment is GRANTED and defendants' motions are DENIED.  This matter shall proceed to trial on the amount of damages.

DATED this 14th day of March, 2006.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT           -7-